2003-NMCA-100

75 P.3d 832

**STATE of New Mexico, Petitioner–Appellee,**

v.

**JOANNA V., Respondent–Appellant.**

**No. 22,876.**

Court of Appeals of New Mexico.

May 21, 2003.

Certiorari Granted, No. 28,100, Aug. 8, 2003.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

CASTILLO, Judge.

{1} Respondent, Joanna V., raises three issues on appeal. Because two issues were not preserved, we address only the denial of Respondent's motion to withdraw her guilty plea. We affirm.

## I. BACKGROUND

{2} In August 2000, Respondent, then fourteen years old, was placed in the custody of the Children, Youth and Families Department (CYFD). Susan Camrud (Camrud), an attorney, was appointed as Respondent's guardian ad litem (GAL). Approximately ten months later, in May 2001, the State charged Respondent with one count of disorderly conduct contrary to NMSA 1978, § 30–20–1(A) (1967). The charge stemmed from a fight that occurred between Respondent and a schoolmate in March 2001. Respondent pleaded not guilty at her June 5, 2001, arraignment. The State amended the charge on June 14, 2001, to one count of public affray contrary to NMSA 1978, § 30–20–2 (1963). At a change of plea hearing on June 26, 2001, Respondent pleaded guilty to public affray, was adjudicated delinquent, and entered into a plea agreement. After her final disposition hearing on September 6, 2001, Respondent was given two years probation with a condition that she successfully complete the children's court's "Grade Court" program (grade court). At all three of these delinquency proceedings, June 5, June 26, and September 6, 2001, Respondent was represented by Camrud.

{3} From October through December 2001, Respondent was ordered to serve thirteen weekends in the San Juan County Detention Center evidently for infractions of grade court rules. The orders do not indicate the precise violations that warranted detention; only that "Conditions of Probation or Conditions of Release" were violated. Nor is it apparent from the record the number of weekends actually served; the Grade Court Booking Sheet indicates that Respondent served six days in October 2001. In addition to grade court detentions, Respondent was twice ordered detained for various non-grade court probation violations: first after the State petitioned for her probation to be revoked on December 19, 2001, and again on February 25, 2002. The violations included use of illegal drugs, leaving the school campus without permission, refusing to live with her foster parents or be placed in another foster home, and refusing to submit to random urinalysis. The record shows that Respondent was actually detained from December 18, 2001, to January 14, 2002, and from February 24, 2002, to March 15, 2002.

{4} The children's court appointed Public Defender Blas Villanueva (Villanueva) as Respondent's defense counsel during the December 20, 2001, hearing on the State's first petition to revoke probation. An order for her detention was entered following the hearing. On January 3, 2002, Villanueva filed a motion to withdraw Respondent's June 26, 2001, plea agreement with the State on the grounds that Respondent received ineffective assistance of counsel. The motion was denied. Respondent timely appealed the denial.

{5} The State filed its nolle prosequi on January 14, 2002, stating it would dismiss its petition to revoke probation. Respondent was released from detention that same day. As of January 25, 2002, Respondent's whereabouts were unknown, and a warrant was issued for her arrest. She was "on the run" until her arrest on February 24, 2002, when she was again detained. The State then filed its second petition to revoke probation. Respondent pleaded guilty to violating probation and was ordered to remain in the custody of the San Juan County Detention Center pending further disposition. On March 11, 2002, Respondent was committed to the custody of CYFD for a one-year period and sent to the Youth Diagnostic and Development Center in Albuquerque, New Mexico.

## II. DISCUSSION

### A. Two Issues Were Not Preserved

{6} Respondent raises two issues for the first time in the brief in chief: first, that her detentions pursuant to infractions of grade court violated certain sections of the New Mexico Children's Code as well as the federal and state constitutions; second, that the children's court abused its discretion when it twice ordered Respondent detained for probation violations "on the sole basis that she had no parents to care for her."

{7} Under our preservation rule, it is essential that a party object to a claimed error below. Rule 12–216(A) NMRA 2003. The rule serves many purposes: it provides the lower court an opportunity to correct any mistake, it provides the opposing party a fair opportunity to show why the court should rule in its favor, and it creates a record from which this Court may make informed decisions. *State v. Reyes*, 2002–NMSC–024, ¶ 41, 132 N.M. 576, 52 P.3d 948; *Diversey Corp. v. Chem–Source Corp.*, 1998–NMCA–112, ¶ 38, 125 N.M. 748, 965 P.2d 332; *Garcia v. La Farge*, 119 N.M. 532, 540, 893 P.2d 428, 436 (1995). The rule is not a mere formality; it ensures that this Court may meet its primary role, to correct trial court error. Our primary role is not to arrive at a conclusion we believe would be just by deciding issues that were not raised below. *State v. Alingog*, 116 N.M. 650, 662, 866 P.2d 378, 390 (Ct.App.

1993) (Pickard, J., dissenting), *rev'd,* 117 N.M. 756, 761, 877 P.2d 562, 567 (1994). Moreover, the record in this case is inadequate. It is difficult, if not impossible, to ascertain exactly what happened regarding grade court, violations of grade court rules, when Respondent was actually detained, and the exact reasons for the detentions that did occur.

{8} Counsel below could have but did not object to Respondent's participation in grade court. During the June 5, 2001, hearing, the children's court imposed conditions of release on Respondent that included attendance at summer school. Counsel did not object. During the June 26, 2001, hearing on Respondent's plea agreement, the detention sanctions for failure to meet the grade court requirements were explained to Respondent by the children's court. Counsel again did not object. Indeed, both counsel and Respondent signed the plea agreement. At the September 6, 2001, final disposition hearing, the children's court further discussed grade court requirements with Respondent. Counsel still failed to object. Appellate counsel suggests that the "lack of proper preservation *demonstrates* the harm inherent in the fact that [Respondent] went through that process without appointed defense counsel." We address in a following section whether there was an inherent conflict of interest in Camrud's representation of Respondent; that is an issue distinct from preservation.

{9} Respondent's counsel, Villanueva, at this point, had the opportunity to object to Respondent's detention for probation violations during the December 20, 2001 and February 26, 2002, hearings on the State's petitions to revoke probation. Counsel failed to do so at either hearing. We conclude that the issues of grade court detentions and probation violation detentions were not preserved for our review. In arriving at this conclusion, we reject Respondent's statement that Villanueva was first appointed as her defense counsel on or about January 3, 2002. We find no evidence for the statement nor does Respondent suggest that Villanueva lacked the opportunity to object at the December 20 hearing.

{10} This Court recognizes that it may exercise discretion to review issues not preserved if they involve general public interest, fundamental error, or fundamental rights. Rule 12–216(B). Counsel, however, does not argue that the exceptions apply. In *State v. Jason F.*, 1998–NMSC–010, ¶ 10, 125 N.M. 111, 957 P.2d 1145, our Supreme Court declined to apply the preservation exceptions when they were not argued on appeal. Similarly, in this case, we will not review the issues regarding detentions because they were not properly preserved and there is no argument on appeal that the exceptions apply. We address next the issue that was preserved.

## B. Motion to Withdraw Plea

### 1. Standard of Review

{11} This Court reviews denial of a motion to withdraw a guilty plea for abuse of discretion. *State v. Barnett*, 1998–NMCA–105, ¶ 12, 125 N.M. 739, 965 P.2d 323. A lower court abuses its discretion "when it acts unfairly or arbitrarily, or commits manifest error by accepting a plea that is not knowingly and voluntarily given." *Id.* Where the defendant enters a plea upon her attorney's advice, the voluntariness and intelligence of the plea generally depends on whether she received ineffective assistance of counsel. *Id.* Questions of ineffective assistance of counsel are reviewed de novo. *Id.* ¶ 13.

### 2. Representation at Delinquency Proceedings

{12} Respondent contends that she was denied the benefit of defense counsel when she agreed to plead guilty to the misdemeanor charge of violating Section 30–20–2. Her argument relies on the fact that Camrud was appointed as Respondent's GAL; having served in this role, Respondent maintains, Camrud was legally and ethically unable to act as defense counsel. Furthermore, she argues that she was not apprised of the inherent conflict of interest in the two roles. Respondent concludes that because Camrud acted as GAL, she was without counsel during the delinquency hearings. We disagree.

{13} It is clear from the record that Camrud is an attorney and that she entered her appearance as Respondent's counsel in the June 5, June 26, and September 6, 2001, delinquency hearings. Respondent alludes to these appearances as technical and insists that Camrud's role and function remained that of GAL. According to Respondent, the record is not clear as to when Camrud ceased serving as GAL. However, the date at which Camrud ceased to serve as GAL is not dispositive; what is critical is that Camrud entered her appearance as Respondent's defense counsel in the delinquency proceedings. We reject Respondent's conclusion that she was not represented by counsel during the delinquency proceedings. We turn to the question of whether Respondent received ineffective assistance of counsel when represented by Camrud.

### 3. Ineffective Assistance of Counsel

{14} A defendant claiming ineffective assistance of counsel based on conflict of interest must show an actual conflict existed; a mere possibility of a conflict is not sufficient to support the claim. *Cf. Churchman v. Dorsey*, 1996–NMSC–033, ¶¶ 12–13, 15, 122 N.M. 11, 919 P.2d 1076 (finding no actual conflict of interest in spite of attorneys' undisclosed dual representation of adult criminal defendants); *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999–NMCA–009, ¶¶ 21, 28, 126 N.M. 664, 974 P.2d 158 (remanding for evidentiary hearing on whether there was actual conflict of interest for parents' joint counsel in a termination of parental rights proceeding). "The test for determining the existence of an actual conflict is whether counsel actively represented conflicting interests that adversely affected his performance." *Id.* ¶ 21 (internal quotation marks and citation omitted). A conflict of interest exists if a plausible defense was not used because it might be damaging to another's interest. *Id.* ¶ 22.

{15} Respondent argues that there is a per se conflict of interest in this case. She accurately details for us the role of an appointed GAL in abuse and neglect proceedings and differentiates the duties and responsibilities

of a GAL and a defense attorney. However, we find nothing in the statutes relied on by Respondent that prohibits an attorney from acting as a GAL during abuse and neglect proceedings and also serving as the child's defense attorney in delinquency proceedings. *See* NMSA 1978, §§ 32A–1–16 (1993); 32A–2–14 (1993) (listing basic rights of child alleged to be delinquent, including the right to a free attorney); 32A–4–10 (1993) (providing for appointment of GAL). We conclude that there is no inherent conflict in the two roles.

{16} Respondent has not shown that Camrud actively represented conflicting interests. She correctly points out that a GAL is required to advocate a child's expressed position only if the GAL believes that position is in the child's best interest. *See In re Esperanza M.*, 1998–NMCA–039, ¶ 36, 124 N.M. 735, 955 P.2d 204. Defense counsel, on the other hand, has a duty to abide by the client's decision concerning the objectives of representation, including a plea decision, whether or not she believes it is in the client's best interest. *See id.;* Rule 16–102(A) NMRA 2003 (requiring attorneys to abide by client's decisions concerning the objectives of representation).

{17} Respondent's memorandum in support of the motion to withdraw her plea suggests that Camrud advised Respondent to plead guilty because Camrud thought it was in Respondent's best interest, not because Respondent wanted to do so, thus advising Respondent as a GAL and not as defense counsel. Yet there is no indication in the record that Respondent did not want to plead guilty and that she wanted to go to trial. *Cf. Patterson v. LeMaster*, 2001–NMSC–013, ¶¶ 10, 34, 130 N.M. 179, 21 P.3d 1032 (concluding ineffective assistance where, among other facts, counsel "advised [petitioner] to plead no contest ... despite [petitioner's] insistence that he wanted to go to trial because he was innocent"). During the plea hearing, the children's court asked Respondent directly whether she intended to enter a guilty plea, understood its consequences, and realized she was waiving certain rights. After responding in the affirmative to the court's questions, Respondent further stated that she was not threatened or forced into pleading guilty, was not promised anything, understood what she was doing, and had time to go over everything with Camrud. Respondent then told the court the factual basis for the plea; that she had called a schoolmate outside and fought with her in front of the school. The fight, Respondent said, was about power. As the State points out, Respondent did not, at the hearing on the motion to withdraw her plea, present evidence to contradict any of her statements, including the voluntariness of the plea. Nor did she provide evidence of Camrud's motivations in advising Respondent to plead guilty, assuming Camrud gave such advice.

{18} We are not directed to nor do we find in the record any evidence that Camrud did not present a plausible defense because of a conflict of interest. Respondent suggests that Camrud may have been paid by the State and CYFD for her appearances at the delinquency hearings. She also says that Camrud was not prepared to act as defense counsel and did not have experience in that role. She further suggests that it appears Camrud did not know a child on first referral would enter a consent decree to avoid adjudication. But according to the record, this was not Respondent's first referral. Camrud knew that Respondent had been arrested for careless driving, without a license, when she was thirteen years old. Without evidence, we cannot agree that Camrud ignored a plausible defense because she served as Respondent's GAL.

{19} Nor will we speculate that Camrud was unaware of a more beneficial disposition for Respondent or that such a disposition was likely if pursued. At the most, Respondent's unsupported statements reflect a mere possibility of conflict; they simply do not, however, provide the requisite showing of actual conflict that adversely affected Camrud's performance as defense counsel. Therefore, we hold as a matter of law that Respondent's ineffective assistance of counsel claim fails. Having established the failure of that claim, we further hold that the children's court did not abuse its discretion in denying Respondent's motion to withdraw her guilty plea. *See Barnett*, 1998–NMCA–105, ¶ 12, 125 N.M. 739, 965 P.2d 323.

238

## III. CONCLUSION

{20} For the foregoing reasons, we affirm.

{21} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JONATHAN B. SUTIN, Judges.