This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    **No. 27,923**

**ISIDRO ALATORRE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**SUTIN, Judge.**

Defendant appeals his convictions for one count of first degree criminal sexual penetration of a minor (CSPM) (child under 13 years of age), contrary to NMSA 1978, Section 30-9-11(A) and (C)(1) (1995, prior to amendments through 2009); six counts of third degree criminal sexual contact of a minor (CSCM) (child under 13 years of age), contrary to NMSA 1978, Section 30-9-13(A) (1991, prior to amendments through 2003); five counts of second degree CSPM (child 13-16 years of age, position of authority), contrary to Section 30-9-11(A) and (D) (2001, prior to amendments through 2009); and four counts of third degree CSCM (position of authority), contrary to Section 30-9-13(A) (2001) (amended 2003). On appeal, Defendant challenges the sufficiency of the evidence, arguing specifically that (1) Victim's testimony supports only four, as opposed to six, convictions for third degree CSCM (child under 13 years of age); (2) the evidence does not support the jury's determination that Defendant acted in a position of authority; and (3) Victim's testimony is not credible. For reasons discussed in this opinion, we affirm.

**The Evidence Supports Defendant's Convictions for**
**Six Counts of Third Degree CSCM (Child Under 13 Years of Age)**

Defendant argues that the evidence is insufficient to support his six convictions for CSCM as charged in Counts 2 through 7 on the asserted basis that Victim's testimony supports only four incidents of CSCM. We review the evidence to determine "whether substantial evidence of either a direct or circumstantial nature

2

exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We do not re-weigh the evidence, nor substitute our judgment for that of the factfinder, so long as there is sufficient evidence to support the verdict. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

To convict Defendant of Counts 2 through 7 of third degree CSCM, the State was required to prove beyond a reasonable doubt that Defendant, on six different occasions, unlawfully and intentionally touched or applied force to Victim's penis; that Victim was twelve years of age or younger; and that this happened in New Mexico between June 6, 2001, and June 20, 2001. *See* § 30-9-13(A) (1991); UJI 14-925 NMRA.

The State relied on Victim's testimony to prove that Defendant committed the crimes. Victim began his testimony by describing his grandmother's house where the crimes took place. Victim testified about the touching incidents that took place when Defendant, his uncle, came for his grandfather's funeral and stayed at his grandmother's house for about two weeks between June 6, 2001, and June 20, 2001.

3

At this time, Victim was not yet thirteen years old. As discussed more fully later in this opinion, Victim testified about three specific incidents during this time-frame, which, for ease of reference, we refer to as the "porch incident," the "bedroom incident," and the "sofa incident." Apart from these three specific incidents, Victim also confirmed that Defendant touched him "three or four other times" down his pants. As for the porch incident, Victim testified that this was the first touching incident and that it took place a few days after his grandfather passed away. Victim testified that he stepped outside at night on his grandmother's porch "to go take a breather, and just reminisce." Defendant went outside, hugged him from the back, and then put his hands down the front of Victim's pants and touched Victim's penis.

With regard to the bedroom incident, Victim testified that this touching took place in the bedroom where his aunt and grandmother slept. Victim testified that he was lying down watching television in this bedroom when Defendant came in, sat next to him, and then touched him on his penis both over then under his clothes. In addition to the touching, this bedroom incident culminated in Defendant masturbating Victim and having Victim anally penetrate him (the subject of Defendant's conviction for first degree CSPM (child under 13 years old)). Victim further related a third touching, the sofa incident, which took place when Victim was sitting on the sofa and Defendant stuck his hand down Victim's pants.

4

In addition to the foregoing three incidents, evidence was presented that Defendant touched Victim "three or four other times." This evidence was presented first by Victim on direct examination. Then on redirect examination, the prosecutor asked Victim about times that Defendant touched him by putting his hand down Victim's pants. The following exchange took place, reiterating Victim's earlier testimony:

> [Prosecutor:] So when you said that he touched you on the porch, and touched you on the sofa during the funeral – during that time he was here for the funeral, and then he touched you three or four other times down your pants, are you sure of that?
>
> [Victim:] Yes, ma'am.

We agree with Defendant that the reference to "three or four other times" can only reasonably be viewed as supporting a finding of three other touching incidents, but not four. This contention is uncontested by the State. Given Victim's equivocal testimony, viewing this reference as support for four incidents would allow for the possibility of an impermissible verdict based on mere conjecture or surmise. *See generally State v. Padilla*, 104 N.M. 446, 448, 722 P.2d 697, 699 (Ct. App. 1986) (providing that "[i]f the evidence must be buttressed by surmise and conjecture rather than logical inference, the conviction cannot stand").

In dispute, however, is the scope of the three other times. From the State's perspective, the "other times" statement references three additional touching incidents

5

separate from the porch, sofa, and bedroom incidents. In this regard, Defendant concedes that the bedroom incident, which culminated in an anal penetration, could not be viewed as encompassed within the three other times. This is because it "involved a sexual touching that was different from the generic 'hands-down-the-pants' scenario" about which Victim was testifying when the prosecutor asked the "other times" question. Defendant asserts, however, that the porch and sofa incidents are necessarily included within the three other times because they are not distinct from the "hands-down-the-pants" scenarios. We disagree. The prosecutor's question clearly references three *other* such incidents apart from the porch, sofa, and bedroom incidents, and from this, the jury could have reasonably inferred that such "hands-down-the-pants" incidents were in addition to those particular incidents. *See State v. Garcia*, 2005-NMSC-017, ¶ 20, 138 N.M. 1, 116 P.3d 72 (recognizing that the jury is entitled to draw reasonable inferences from the evidence to reach a conclusion that the defendant committed a crime).

Based on the foregoing discussion, we hold that Victim's testimony referencing the porch and sofa incidents, the three other times, and the bedroom incident, support the jury's determination that Defendant touched Victim's penis on six separate occasions during the period that Defendant was staying at the grandmother's house for the grandfather's funeral.

**The Evidence Supports the Jury's Determination That Defendant Acted in a Position of Authority When He Committed the Crimes**

In support of his sufficiency argument, Defendant also argues that the evidence was insufficient to show that he occupied a position of authority over Victim for his convictions for Counts 8 through 16.

To convict Defendant of the sexual offenses by a person in a position of authority, the State had to prove beyond a reasonable doubt that "Defendant was a person who[,] by reason of his relationship [with Victim,] was able to exercise undue influence over [Victim] and used his position of authority to coerce [Victim] to submit to the act[s.]" *See* NMSA 1978, § 30-9-10(E) (1993) (amended 2001 and 2005) (defining "position of authority" as "that position occupied by a parent, relative, household member, teacher, employer or other person who, by reason of that position, is able to exercise undue influence over a child"). The undue influence to compel submission "might take many forms but is less overtly threatening than physical force or threats." *State v. Gardner*, 2003-NMCA-107, ¶ 22, 134 N.M. 294, 76 P.3d 47 (internal quotation marks and citation omitted). "Undue influence results from moral, social, or domestic force exerted upon a party, so as to control the free action of his or her will." *Id.* (alteration omitted) (internal quotation marks and citation omitted).

In the present case, our review of the evidence supports the jury's determination that Defendant was in a position of authority over Victim and used this authority to

coerce Victim to submit to the sexual acts. As elicited at trial, Defendant is the brother of Victim's grandmother and was referred to by Victim as "Uncle Junior." In addition to his status as a family member, Defendant was afforded a position of trust with regard to Victim. During the relevant time period, Defendant lived in the home of Victim's grandmother, where Victim went after school and during the summers. Victim testified that there were times when he was left totally alone with Defendant, and further testified that, during the bedroom incident, his grandmother and other family members were outside cleaning the yard. Victim's grandmother testified that when she ran errands or worked in her yard Victim would be in her house with Defendant. When asked if he and Victim were ever alone in the house, Defendant responded, "I can recall one or two instances where we were there right before I went to work." In addition to being trusted to be in the grandmother's home with Victim, Defendant provided transportation to Victim by picking him up from school when asked to do so by Victim's mother or grandmother and dropping Victim and his friends off at the mall if they needed a ride.

Moreover, both Victim and his mother entrusted Defendant with their problems. In this regard, Defendant testified that Victim would periodically mention problems he was having with the loss of his grandfather. Defendant testified that he told Victim that drugs were not the solution to solving his problems and that he would talk to

Victim's mother and grandmother to try to get him some professional help if Victim needed it. Similarly, Defendant testified that, before he moved back to New Mexico, Victim's mother would call him at various times to discuss Victim's problems. Lastly, Defendant also played a role in providing financial assistance to Victim's family. Defendant testified that he moved in with Victim's grandmother to help her with her expenses and that he also gave spending money to Victim and his siblings as well as to Victim's mother when she needed help buying things like shoes for Victim.

Despite the foregoing, Defendant maintains that the evidence did not show that he was actually in a position of authority such that he could exercise undue influence over Victim. *See generally State v. Segura*, 2002-NMCA-044, ¶ 13, 132 N.M. 114, 45 P.3d 54 (emphasizing that the prosecution must prove that the defendant, by reason of his authority, was actually able to exercise undue influence over the child). We disagree. While Victim did not expressly object to Defendant's commission of the crimes, the evidence supports a conclusion that he yielded to Defendant because he felt like he had to comply. Victim testified that he did not want the things Defendant did to him to happen, but that he did what Defendant told him to do because he "was just trapped in a world [he] couldn't get out [of]" and "was just hoping that God was going to end it." Victim additionally testified that, when his grandmother left the house, Defendant "[j]ust made me pull down my pants and get me hard and stick it in

9

his butt." When asked why he continued to stay at his grandmother's house and did not tell anyone what was happening to him, Victim responded "I was lost" and "I didn't think they would believe me." Consistent with Victim's testimony, his therapist testified that Victim was extremely vulnerable after his grandfather's death and that Defendant, as his uncle, was an authoritative figure, such that Victim would feel like he had no choice but to comply. Victim's therapist additionally testified that Victim's acts of cutting himself and using drugs "were all symptoms of the sexual abuse where he was trying to get as far away from that experience as possible."

In sum, the evidence provides that Defendant was a person of authority who was relied upon and trusted by Victim's family: Defendant was a close family relative; he lived in the grandmother's house during the time that Victim spent his afternoons and summers at the home; he provided financial assistance to Victim and his grandmother; he was authorized to provide transportation to Victim when needed; and he was a person with whom Victim and his mother shared their problems. *See, e.g.*, *State v. Gipson*, 2009-NMCA-053, ¶¶ 24-25, 146 N.M. 202, 207 P.3d 1179 (affirming the jury's determination that the defendant used his position of authority to commit the sexual crimes when the defendant was in the role of a trusted family friend who was allowed to be alone with the victim, who did chores at the behest of the victim's mother, and who provided the victim with money for doing jobs);

10

*Segura*, 2002-NMCA-044, ¶ 16 (recognizing evidence of position of authority was sufficient where parents entrusted child to the care of a person who informally acted as a counselor to the child from time to time); *State v. Gillette*, 102 N.M. 695, 702, 699 P.2d 626, 633 (Ct. App. 1985) (considering that the victim frequently sought advice from the defendant as a factor in concluding that the defendant used his position of authority to coerce the victim into submitting to the sexual acts). We further conclude that the evidence supports a conclusion that Defendant used his position of authority to coerce Victim to submit to the sexual acts: Victim testified that he felt "trapped," that Defendant "made" him submit, and the therapist testified that Victim would have felt like he had no choice but to comply. *See, e.g.*, *State v. Haskins*, 2008-NMCA-086, ¶ 14, 144 N.M. 287, 186 P.3d 916 (holding that "a rational jury could have found that [the d]efendant used his position of authority as a trained professional to control the free action of the girls' wills by the very fact that they consented or failed to object to the massaging of their intimate parts"); *State v. Trevino*, 113 N.M. 804, 807, 833 P.2d 1170, 1173 (Ct. App. 1991) (stating that "[c]ommon sense and experience teaches us that children generally yield to the wishes of adults" and considering the victim's testimony that he did not tell others of the incident because he was scared and "didn't know how to handle it then" as evidence from which the jury could infer that the defendant used his position of authority to

11

coerce the victim). Based on the foregoing discussion, we hold that sufficient evidence supports the jury's findings that Defendant used his position of authority to exercise undue influence over Victim. *See State v. Sparks*, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct. App. 1985) (defining substantial evidence as evidence which a reasonable mind would consider adequate to support a defendant's conviction).

**It Was the Jury's Prerogative to Assess Victim's Credibility**

Lastly, Defendant argues that the evidence was insufficient to support his convictions because Victim's testimony was not credible. Defendant refers to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), in support of his position.

Defendant argues that "it defies belief" that the acts could have taken place without detection because "[t]here were [sic] almost always several adults present in the house" when he and Victim were there, the house was small and crowded and had no doors that would lock, and Victim was "the *only* witness who claimed that anything untoward had occurred." Although Defendant believes that the circumstances belie Victim's credibility, it was the jury's prerogative as factfinder to determine otherwise. *See generally State v. Nichols*, 2006-NMCA-017, ¶¶ 5, 10-11, 139 N.M. 72, 128 P.3d 500 (holding that the jury could rely on the victim's uncorroborated testimony to support the defendant's conviction for attempted CSP); *see also State v. Gonzales*,

1997-NMSC-050, ¶ 18, 124 N.M. 171, 947 P.2d 128 (holding that it is the factfinder's prerogative to weigh the evidence and to determine the credibility of the witnesses). Thus, while Defendant denies molesting Victim and asserts that—had the crimes taken place—they would have been detected by family members who were present in the home, it was the jury's prerogative to disbelieve Defendant. *See State v. Day*, 2008-NMSC-007, ¶ 15, 143 N.M. 359, 176 P.3d 1091 (recognizing that "the [jury] is free to reject the defendant's version of the events"). **CONCLUSION**

Based on the foregoing discussion, we hold that there is sufficient evidence to support Defendant's convictions for one count of first degree CSPM (child under 13 years of age), contrary to Section 30-9-11(A) and (C)(1); six counts of third degree CSCM (child under 13 years of age), contrary to Section 30-9-13(A); five counts of second degree CSPM (child 13-16 years of age, position of authority), contrary to Section 30-9-11(A) and (D); and four counts of third degree CSCM (person of authority), contrary to Section 30-9-13(A). We affirm Defendant's convictions.

We lastly note that the judgment and sentence, when reciting Defendant's convictions for five counts of second degree CSPM (for Counts 8-11 and 15), states "Position of Authority – Child 13 to 16 Years Old." The applicable statute, Section 30-9-11(D)(1) (2001), however, provides that the relevant age of the child is 13 to 18 years of age. Accordingly, we remand for the limited purpose of entering an amended

13

judgment and sentence to reflect that Defendant was convicted for five counts of second degree CSPM (Position of Authority – Child 13 to 18 Years Old).

**IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**I CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**TIMOTHY L. GARCIA, Judge, specially concurring.**

**GARCIA, Judge (specially concurring).**

I write to specially concur in this decision because Defendant was convicted of three factually indistinguishable counts of CSCM based solely upon Victim's trial testimony as follows:

> Q    How many times did [Defendant] stick his hand down your pants while he was here for that funeral?
>
> A    A few times.
>
> Q    What is a few times [Victim's name]?
>
> A    Like, three or four.
>
> . . . .
>
> Q    So when you said that he touched you on the porch, and touched you on the sofa during the funeral—during that time he was here for the funeral, and then he touched you three or four other times down your pants, are your sure of that?
>
> A    Yes, ma'am.

The State relied solely upon this testimony to convict Defendant of three of the six counts of CSCM. Trial counsel failed to raise this matter in the district court. Appellate counsel has also failed to raise the matter in this appeal, either as fundamental error or as ineffective assistance of trial counsel. This Court is not obligated to raise this new issue on its own accord, and we have chosen not to do so. *State v. Joanna V.*, 2003-NMCA-100, ¶ 10, 134 N.M. 232, 75 P.3d 832 (declining to

15

review an issue on appeal where the issue was not preserved below and where counsel failed to argue any exception regarding the general public interest, fundamental error, or fundamental rights); *State v. Lucero*, 1999-NMCA-102, ¶ 43, 127 N.M. 672, 986 P.2d 468 (reasoning that this Court is not required to address issues that were not properly preserved or briefed). As a result, we leave this apparent error for Defendant to raise in habeas corpus proceedings if he deems it appropriate.

This Court has clearly stated that multiple undifferentiated sexual abuse charges that are factually indistinguishable will violate a defendant's due process rights and protections against double jeopardy. *State v. Tafoya*, 2010-NMCA-010, ¶¶ 19-24, 147 N.M. 602, 227 P.3d 92 (consolidating indistinguishable convictions of certain types of specific behavior into single counts of an ongoing pattern of conduct for each specific type of behavior charged); *State v. Dominguez*, 2008-NMCA-029, ¶¶ 7-11, 143 N.M. 549, 178 P.3d 834 (affirming the dismissal of five indistinguishable counts of ongoing conduct that occurred during the charging period); *State v. Gardner*, 2003-NMCA-107, ¶ 28, 134 N.M. 294, 76 P.3d 47 (allowing a charge of one count for a pattern of conduct that occurred continuously and randomly, not at specific times). Without a legislative remedy, this Court has determined that "the [s]tate must either charge ongoing conduct as a single offense or charge a defendant with and

16

*provide evidence of distinct offenses that will support multiple counts*." *Dominguez*, 2008-NMCA-029, ¶ 11 (emphasis added).

The ongoing pattern of unlawful sexual conduct in this case was charged and tried as six specific counts of CSCM. Evidence of only three distinct CSCM events that are factually distinguishable were presented by the State's evidence. These were the porch incident, the sofa incident, and the bedroom incident. No other factually specific evidence was presented to support the remaining three convictions of CSCM.

_____
**TIMOTHY L. GARCIA, Judge**

17