This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36842**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GARRY WILLIAMS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Garry Williams appeals his conviction for aggravated battery (great bodily harm), contrary to NMSA 1978, Section 30-3-5(C) (1969). Defendant argues the district court (1) improperly instructed the jury, pursuant to *State v. Southworth*, 2002-NMCA-091, 132 N.M. 615, 52 P.3d 987; (2) abused its discretion by sustaining the State's hearsay objection; and (3) abused its discretion by striking a witness's response to a question as non-responsive. Concluding there was no reversible error, we affirm.

**BACKGROUND**

**{2}** This case arises from an altercation between Defendant and Victim, which took place at Victim's small recreational vehicle (RV) where Victim resided. Victim is the father of Defendant's girlfriend. On the day of the incident, Defendant was near Victim's RV, intending to meet with Victim and Victim's father about the possibility of purchasing the house located next door to Victim's RV. Shortly before the altercation, Victim and Defendant went into Victim's RV to talk.

**{3}** At trial, Victim and Defendant gave conflicting accounts of the altercation. Defendant claims he was sitting down when Victim came over, stood over Defendant, grabbed Defendant's arms and slammed him into a wall, hitting his head and causing his glasses to fall off. Defendant testified that Victim also hit his nose and that Defendant panicked and lost control of his bowels. Defendant stated he could not break loose from Victim's grip and began spinning and hitting Victim to try and break free. Defendant testified he stopped hitting Victim and left as soon as he could get his arm free.

**{4}** According to Victim, while conversing with Defendant, Defendant jumped up and got in Victim's face and said, "Any swinging dick can do what you can do." Victim testified he then told Defendant he needed to leave, but Defendant sat down instead of leaving. Victim went to the bathroom to get out of the way, and Defendant made additional insulting comments about Victim. Defendant was still in the RV after Victim returned from the bathroom, and Victim asked Defendant what right he had to say the things he had said. Defendant jumped up and "acted like he was posturing up to fight." Victim then grabbed Defendant by the shoulders and turned him around, intending to push Defendant near the door, but before he could do so Defendant overpowered Victim, threw him on the couch, and straddled him.

**{5}** Defendant admitted he hit Victim multiple times. Victim lost consciousness and did not recall being struck. When Victim regained consciousness, there was blood everywhere, Victim was missing teeth and had cuts all over his face, and Defendant was gone. Victim sustained fractures above and below his eyes and had a fractured nose and a broken jaw. Victim had surgery on his face and sustained permanent injuries from the altercation including nausea, blurry vision in one eye, facial numbness, and an inability to breathe out of his left nostril. Following a jury trial, Defendant was convicted of aggravated battery (great bodily harm). Defendant appeals.

**DISCUSSION**

**I.    Jury Instructions**

**{6}** Defendant argues that the jury instructions were flawed because (1) instructions premised on *Southworth* were not appropriate, in part because the evidence was insufficient to prove that Victim was defending his home against a trespasser, and (2) the district court erred in giving a self-defense instruction as to Victim, a modified "no

retreat" instruction, and an instruction on criminal trespass. In addition to these specific claims of error, we understand Defendant to assert generally that the jury instructions were confusing and did not adequately inform the jury of applicable burdens of proof.

**{7}** "The propriety of jury instructions given or denied is a mixed question of law and fact[,]" which we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "When, as in this case, a challenge to the jury instructions has been preserved, we review for reversible error." *State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245. Under this standard, "[w]e determine if a reasonable juror would have been confused or misdirected by the jury instructions that were given." *State v. Candelaria*, 2019-NMSC-004, ¶ 35, 434 P.3d 297 (internal quotation marks and citation omitted). "We consider jury instructions as a whole, not singly." *State v. Montoya*, 2003-NMSC-004, ¶ 23, 133 N.M. 84, 61 P.3d 793.

## A.  The District Court Did Not Err by Giving Jury Instructions Premised on *Southworth*

**{8}** Defendant contends instructions premised on *Southworth* were not appropriate in this case. In *Southworth*, we addressed the interplay between trespass and self-defense, determining that in situations where these two concepts are at issue, "an additional jury instruction is needed to properly delineate the circumstances under which a trespasser has a right to stand his ground." 2002-NMCA-091, ¶ 13. Although "an individual normally has an unqualified right to stand his ground against attack[,]" a potential exception to this "unqualified right" occurs when the rights of a trespasser to stand his ground compete with the rights of an occupant to defend his or her home. *Id.* ¶ 11. Accordingly, in matters involving altercations where there is evidence that a defendant is a potential trespasser, courts should apply the framework established by *Southworth* in order to properly integrate self-defense and trespass.

**{9}** We understand Defendant to argue the jury instructions given to address *Southworth* were unnecessary because there was insufficient evidence that Defendant was a trespasser. However, the State's theory of the case, as summarized in its opening statement, was premised on Victim asking and physically directing Defendant to leave Victim's home. Thereafter, Victim testified that he asked Defendant to leave and gave him a chance to do so. Although Defendant testified Victim never asked him to leave, under Victim's version of events, there was a sufficient basis for the jury to believe that Defendant knew or should have known his permission to remain in Victim's home had been revoked. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("[T]he jury is free to reject [a d]efendant's version of the facts."). We thus conclude a sufficient evidentiary basis was laid that Defendant was trespassing, and such evidence supports giving jury instructions premised on *Southworth*. *See Southworth*, 2002-NMCA-091, ¶ 13 (stating that additional instructions are needed to address when a trespasser has the right to stand his or her ground).

**{10}** Defendant attempts to distinguish *Southworth* by asserting that Victim invited Defendant into the home and arguing that Defendant should therefore be treated as an

invitee. However, an initial invitation does not foreclose the possibility that an invited guest can become a trespasser. *See, e.g.*, NMSA 1978, § 30-14-1(A) (1995) (defining criminal trespass as "knowingly entering *or remaining*" on private property without the owner's permission (emphasis added)). The jury was instructed accordingly, as it was informed that trespass can arise when an individual enters *or remains* in the home without the owner's permission and that an owner may withdraw initial consent for an individual to be in the home. Indeed, in *Southworth*, there was evidence that the victim had initially asked the defendant to come over, but later events suggested the defendant was no longer welcome at the victim's home. *See* 2002-NMCA-091, ¶¶ 3-4. To the extent Defendant is arguing the district court erred by failing to instruct on the legal differences between an invitee and a trespasser, we note Defendant never requested that any such instruction be given and has not sufficiently explained how an additional instruction on this point would have clarified the applicable law. *See State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537 ("Generally, to preserve error on a trial court's refusal to give a tendered instruction, the [a]ppellant must tender a legally correct statement of the law."); *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (stating that unpreserved issues regarding jury instructions are reviewed for fundamental error); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

**{11}** Based on the foregoing, we conclude the district court did not err in giving jury instructions premised on *Southworth*. The State proffered "*Southworth*" instructions, which were given, but Defendant did not. He instead makes various arguments about the deficiencies in the instructions, which we take up next.

### B. The Jury Instructions Satisfied the Requirements of *Southworth*

**{12}** In *Southworth*, we explained that a trespasser is only entitled to use self-defense in situations where he or she is faced with unlawful force. 2002-NMCA-091, ¶ 14. When the evidence suggests a defendant may be a trespasser, the jury must determine whether the victim used lawful force against a potential trespasser. *Id.* ¶ 15. If the force used by the victim was lawful, a trespasser has no right to stand his ground. *Id.* Conversely, if the force used by the victim was unlawful, the defendant has a right to stand his ground and to use reasonable force in self-defense, even if he is a trespasser. *Id.* Finally, because the state bears the burden to disprove a defendant's claim of self-defense, if the defendant had a right to stand his ground (i.e., was faced with unlawful force) the jury must decide whether the state proved that the defendant did not act in self-defense. *Id.* ¶¶ 10, 15.

**{13}** We first address the instructions regarding whether Victim's use of force was lawful. Under Victim's version of events, any force he used was aimed at getting Defendant to leave or protecting himself from Defendant. Victim also testified he asked Defendant multiple times to leave his home. The jury was given a definitional instruction explaining criminal trespass to consider whether Defendant was a trespasser, and another "no retreat" instruction, both of which indicated that a homeowner may use

reasonable force to remove a trespasser from the home. Further, in a separate self-defense instruction, the jury was instructed to consider whether the amount of force Victim used was reasonable and necessary for victim's self-defense. Taken together, these instructions satisfied *Southworth*'s mandate that the jury must consider whether a victim used lawful force in his confrontation with a trespasser. And, contrary to Defendant's assertion that the jury was not given any instruction regarding the lawfulness of Victim's conduct, the jury was instructed to determine whether Victim acted reasonably under the circumstances. *See id.* ¶ 18 (explaining that "use of force beyond what is reasonable in relation to the threat renders the entire action unlawful").

**{14}** Defendant contends that the district court erred in giving a self-defense instruction for Victim and that giving two self-defense instructions created confusion. However, *Southworth* suggests that giving two self-defense instructions—one for the defendant and one for the victim—is the proper way to integrate the concepts of self-defense and trespass. *See id.* ¶ 13 ("[T]he proper way to integrate self-defense and trespass is to give two self-defense instructions—one for the defendant and one for the alleged victim."). Accordingly, pursuant to *Southworth*, we conclude the instructions properly allowed the jury to consider the lawfulness of Victim's conduct, and the district court did not err by giving a self-defense instruction for Victim. *See id.* ¶ 20 (explaining that it may be appropriate for the jury to consider whether the victim's actions were justified under the alternative theory of self-defense rather than defense of property).

**{15}** In light of Defendant's claim that he was responding to Victim's use of force, the jury was also instructed that a person may stand his ground and defend himself without needing to retreat, *unless* he is a trespasser and the homeowner used reasonable force to remove the trespasser from the home. Defendant asserts error in the district court's modification of the instruction based on UJI 14-5190 NMRA, which was amended at the State's request in order to include the caveat that a trespasser faced with reasonable (i.e., lawful) force is not entitled to stand his ground and defend himself. Defendant contends the unmodified version of UJI 14-5190 should have been given. However, the modified instruction allowed the jury to consider the questions of whether Victim acted lawfully and whether Defendant was entitled to use self-defense—the precise inquiries *Southworth* requires the jury to contemplate. *See Southworth*, 2002-NMCA-091, ¶¶ 15, 19 (describing the instructions that should be given, including that the jury should be instructed that a defendant has the right to stand his or her ground unless threatened with lawful force); *State v. Denzel B.*, 2008-NMCA-118, ¶ 12, 144 N.M. 746, 192 P.3d 260 ("[T]he lawfulness of a victim's conduct is . . . relevant to the availability of a self-defense instruction for a defendant.").

**{16}** Without the modified instruction, the jury would not have been asked to consider all relevant aspects of self-defense in this case. *See State v. Anderson*, 2016-NMCA-007, ¶ 10, 364 P.3d 306 (stating that the jury must be instructed "on all relevant aspects of self-defense"). Indeed, in *Southworth*, the jury was given the unmodified version of UJI 14-5190, which resulted in confusion and led to error. *See* 2002-NMCA-091, ¶¶ 7-8. Here, the modified instruction appropriately informed the jury of what New Mexico law deems reasonable concerning the availability of self-defense to a potential trespasser.

*See Anderson*, 2016-NMCA-007, ¶ 14 (explaining that the no-retreat instruction is "critical to understanding the third element of a general self-defense instruction[,]" which assesses whether a defendant acted reasonably). The modified instruction properly allowed the jury to consider the relevant considerations set forth in *Southworth*. *See Southworth*, 2002-NMCA-091, ¶¶ 15, 18 (explaining that the jury must consider whether a potentially trespassing defendant was faced with unlawful force); *see also Anderson*, 2016-NMCA-007, ¶ 14 (stating a jury instruction may be necessary "when absence of clarification would render the jury's understanding of the law deficient").

**{17}** We note Defendant repeatedly suggests in his briefing that the district court should have given an instruction based on UJI 14-5191 NMRA (self-defense; limitations; aggressor), rather than the instructions given, to address any limitations on the use of self-defense and questions regarding who was the primary aggressor. However, Defendant never requested that UJI 14-5191, or any other instruction to address limitations on self-defense, be given. *See Jernigan*, 2006-NMSC-003, ¶ 10; *see also* Rule 5-608(D) NMRA (stating that when objecting to the "failure to instruct on any issue, a correct written instruction must be tendered"); *Benally*, 2001-NMSC-033, ¶ 12 (stating that unpreserved issues regarding jury instructions are reviewed for fundamental error). In any event, UJI 14-5191 is not supported by the evidence in this case because there was no suggestion that Victim responded with "force which would not ordinarily create a substantial risk of death or great bodily harm" or that Defendant "tried to stop the fight." *See* UJI 14-5191.

**{18}** We conclude the jury instructions given in this case adequately addressed the matters identified in *Southworth*. *See Denzel B.*, 2008-NMCA-118, ¶ 12 (summarizing the instructional rules from *Southworth* as requiring "the jury . . . to decide whether the victim's actions were justifiable, and if the actions were not justified, the jury could then consider whether the defendant acted in self-defense").

## C.     The Jury Instructions Did Not Modify the Applicable Burdens of Proof

**{19}** Defendant next argues the jury instructions were confusing such that applicable burdens of proof were unclear to the jury. Specifically, Defendant argues the instructions, as a whole, did not require the State to disprove beyond a reasonable doubt that Defendant acted in self-defense. "When a defendant presents evidence of self-defense, the jury instructions must inform, in no uncertain terms, that the [s]tate bears the burden of disproving self-defense." *Southworth*, 2002-NMCA-091, ¶ 10 (internal quotation marks and citation omitted). Contrary to Defendant's assertion, the instructions given expressly informed the jury of the State's burden. The elements instruction informed the jury that the State must prove beyond a reasonable doubt that Defendant "did not act in self-defense." The instruction concerning whether Defendant acted in self-defense likewise stated: "The burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self[-]defense. If you have a reasonable doubt as to whether the defendant acted in self[-]defense, you must find the defendant not guilty." These instructions properly informed the jury, "in no uncertain terms," the State was required to prove Defendant did not act in self-defense. *See id.*;

*see also State v. Cunningham*, 2000-NMSC-009, ¶ 14, 128 N.M. 711, 998 P.2d 176 ("Since [the defendant's] claim of self-defense was the major issue at trial, and the jury was properly instructed on self-defense, we do not believe that a reasonable juror would have been confused by the jury instructions.").

**{20}** Defendant also asserts the jury instructions did not adequately explain to the jury that the State had to prove Victim acted lawfully and that Defendant was a trespasser. In particular, Defendant argues the self-defense instruction given for Victim suggested to the jury that Defendant had to prove Victim was not acting in self-defense. However, unlike the similarly worded self-defense instruction given for Defendant, which clearly stated the State's burden of proof, the self-defense instruction given for Victim did not place the burden on Defendant to prove Victim was not acting in self-defense. We are therefore unpersuaded that the jury would have reasonably believed Defendant had to prove Victim was not acting in self-defense. *See Benally*, 2001-NMSC-033, ¶ 18 ("Just as a jury expects an element included in an instruction to reflect the intent to include that element within the relevant law, the jury would naturally assume that the omission of an element reflects the intent to exclude that element from the law governing the issue.").

**{21}** The jury instructions were clear that the burden was on the State to prove Defendant acted unlawfully. *See State v. Sosa*, 1997-NMSC-032, ¶ 26, 123 N.M. 564, 943 P.2d 1017 (explaining that "[o]nce the defendant claims that the conduct in question was lawful, the prosecution must prove unlawfulness beyond a reasonable doubt"). As discussed, the instructions clearly placed the burden on the State to prove Defendant did *not* act in self-defense. The instructions provided clarification regarding the relevant elements of self-defense in this case, explaining that if the jury considered Defendant to be trespassing and Victim to be acting lawfully, Defendant did not have a right to use self-defense. The instructions, as a whole, therefore indicated the State had the burden to disprove Defendant's theory of self-defense and could do so by either proving Defendant was not entitled to use self-defense in the first place—as a trespasser faced with lawful force—or by otherwise proving Defendant did not satisfy the elements of the self-defense instruction.

**{22}** As a whole, the jury instructions given were appropriate. To the extent the jury instructions did present any confusion, any resulting error was harmless because the jury instructions concerning Defendant's claim of self-defense were clear, and the jury concluded the State met its burden to prove Defendant did not act in self-defense. For the foregoing reasons, we conclude Defendant has not demonstrated reversible error with regard to the jury instructions.

## II. Hearsay Objection

**{23}** Defendant claims the district court erred in refusing to allow defense counsel to ask Victim if he had brittle bones, which according to Defendant, would have established Victim's injuries were a result of his low bone density as opposed to the altercation. The State contends that Defendant misstates the issue, and that the district

court instructed the jury to disregard a question and testimony following the State's objection on hearsay grounds. Our review of the record confirms the State objected to defense counsel's specific question of whether Victim recalled the doctor talking to him about the fact that he has very brittle bones on the grounds that the question called for hearsay. "We review a trial court's admission or exclusion of evidence for an abuse of discretion." *State v. Romero*, 2019-NMSC-007, ¶ 40, 435 P.3d 1231. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Apodaca*, 1994-NMSC-121, ¶ 23, 118 N.M. 762, 887 P.2d 756 (internal quotation marks and citations omitted).

**{24}** At trial, defense counsel asked Victim if he recalled the doctor talking to him about his brittle bones. The State objected on hearsay grounds and before the district court could rule, Victim stated "No." The State then objected again and moved to strike the question and answer. Following a bench conference, the district court sustained the objection and informed the jury to disregard the question and response. Defense counsel did not ask any more questions of Victim about his brittle bones. Defendant does not suggest he argued below that any hearsay exception would allow admission of this testimony.

**{25}** In his reply brief, Defendant argues the testimony should have been permitted pursuant to the medical records exception to hearsay, Rule 11-803(4) NMRA. Because the applicability of the medical records exception is both unpreserved and raised for the first time in Defendant's reply brief, we will not consider it. *See State v. Joanna V.*, 2003-NMCA-100, ¶ 10, 134 N.M. 232, 75 P.3d 832 (declining to review an issue on appeal where the issue was not preserved below and where counsel failed to argue any exception regarding the "general public interest, fundamental error, or fundamental rights"), *aff'd*, 2004-NMSC-024, 136 N.M. 40, 94 P.3d 783; *Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 15, 288 P.3d 902 (stating that we do not consider an appellant's arguments that were not raised in the brief in chief, unless such arguments are directed to new arguments or authorities in the answer brief).

**{26}** We agree with the State that the district court did not abuse its discretion in sustaining an objection to a question that called for hearsay, and in striking the question and response. To the extent Defendant's arguments are premised on a perceived relevancy as to why Victim has brittle bones, this inquiry is not properly before us given that the objection was sustained on hearsay grounds.

## III.  Non-Responsive Testimony

**{27}** Lastly, Defendant argues the district court abused its discretion in striking the response of a defense witness to a question by the State concerning if she could understand Defendant in a phone conversation. We review the district court's exclusion of the testimony for an abuse of discretion. *Romero*, 2019-NMSC-007, ¶ 40. "We review improperly admitted evidence for non-constitutional harmless error." *State v. Serna*,

2013-NMSC-033, ¶ 22, 305 P.3d 936. "Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful." *State v. Tollardo*, 2012-NMSC-008, ¶¶ 25-27, 43-44, 275 P.3d 110. "[N]on-constitutional error is harmless when there is no reasonable probability the error affected the verdict." *Id.* ¶ 36 (emphasis, internal quotation marks, and citation omitted); *see* Rule 11-103(A) NMRA ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party[.]").

**{28}** In response to the prosecutor's inquiry of Defendant's girlfriend as to whether she previously stated she did not really understand what Defendant said on the phone but recognized his voice, Defendant's girlfriend responded "[w]ell I did understand when he said your dad attacked me." The district court sustained the State's objection to strike this testimony as non-responsive. We conclude reversal of the district court's decision is not warranted because Defendant has not shown he was prejudiced by the exclusion of this testimony. Defendant could have, but did not, ask the witness about her understanding of the conversation on re-direct. In addition, the stricken testimony was cumulative, given that Defendant and an officer had already testified as to Defendant making a similar statement. "[T]he trial court in its discretion may properly exclude cumulative evidence." *State v. Marquez*, 1998-NMCA-010, ¶ 24, 124 N.M. 409, 951 P.2d 1070; *see State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (holding that the "[appellate court] will affirm the [district] court's decision if it [is] right for any reason so long as it is not unfair to the appellant").

**{29}** To the extent Defendant is arguing that the testimony should not have been stricken based on the excited utterance exception to the rule against hearsay, we decline to consider any such claim because Defendant's argument is unclear and appears to not have been raised below. *See Headley*, 2005-NMCA-045, ¶ 15 (stating that we do not review unclear arguments); *Joanna V.*, 2003-NMCA-100, ¶ 10 (declining to review an unpreserved issue on appeal).

**CONCLUSION**

**{30}** For the foregoing reasons, we affirm Defendant's conviction.

**{31}    IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**